Your Honors, if it pleases the Court, I believe the issue before us today is one of jurisdiction. Whether or not FAERS interferes with Tina Neville's ability to collect her EEO award due to her position as a Texas National Guard civilian employee, we assert that she does because nowhere does the FAERS document prohibit Title VII and her ability to collect fees, I'm sorry, not fees, an award for damages that occurred from purely her civilian employment. None of the cases that the government has cited to talk about where the party was injured in the course of their civilian employment. They talk about, well, on military orders, performing their military duties. She was working on F-16s, though. Yes. So adjudicating a dispute about a woman who's working as part of a team on F-16s would necessarily implicate the military, its chain of command, military workforce, military workplace, etc., etc., etc. All the things that FAERS talks about. Not whatsoever because in this situation, if you look at what the judge did, the judge didn't make any orders about military discipline or military command. The judge did not say, hey, you have to discipline the supervisor. Hey, you have to move Ms. Neville to another department. Hey, he needs to be stopped. Didn't talk about that at all. What it specifically talked about was damages arising out of her civilian employment regarding her civilian EEO matter. But doesn't she have an EEO award for reinstatement? I'm sorry, sir. Isn't reinstatement part of the EEO order? Reinstatement to her job, I believe it was. Yes. Isn't that one of the six factors? I've forgotten how many of the various things are part of the – on the motion to enforce. I'm sorry. I'm sure I hear you clearly. I'm sorry. I'm having a problem hearing you. No. On the motion to enforce. Yes. Isn't one of the things that the EEO ordered reinstatement? Or is that not right? If I recall correctly, I think that – and forgive me, I wasn't focused on that very specifically. But if I recall, I think that was in regards to get her any back pay that she was entitled to as a civilian employee and her award, of course, from the EEO, but not in the sense of reinstating her into her military rank. Because, again, all of the other situations talk about where the person has been discriminated based on their race or their gender while the course of pursuing their military duties. In – I need to check my case, excuse me. I think it was in U.S. v. Johnson where Judge Scalia was very concerned about, well, where is the line drawn? How far can we go down this rabbit hole if a civilian secretary is bending over to file a military document in a military filing cabinet on a military base and she's sexually accosted? Does that mean that the civilian secretary has no recourse because of Ferris? We've seen in many other cases where a military or, in one case, a Coast Guard helicopter pilot was injured and died because of some mistake possibly by a civilian FAA. But that was clearly in the mission of the Coast Guard. The mission of the Coast Guard is to go save people. The mission of the Coast Guard is to patrol our waters. The mission of the Army is to march into the field of combat. The Navy is with the boats and so forth. This was a non-combat status. My client was simply doing the civilian job that she was hired for, preparing and de-preparing planes and making sure of their maintenance and upkeep. This wasn't in the theater of war. She wasn't in combat. She wasn't activated. I mean, if we're going to say that she was truly in the realm of the military sphere, then she should be getting military benefits, a military retirement. She's due military promotions and military back pay. But that's not what's going on here. That's why Congress created the dual status technician back in the late 60s because they see that there was a need for additional help, but they didn't need to have them on the roles of the military. This allowed the government to save money by not having to pay a very generous and, of course, earn benefits from retirement, from VA benefits, access to TRICARE for life. That's not what's going on here. She earned her civilian retirement. She had the right through not only the National Guard Act but through Title VII. Title VII never excluded National Guard's technicians from applying or, to me, from utilizing that process. As a matter of fact, the Texas Air National Guard sends you to the federal EEO, not the internal EEO, when it comes to any discrimination on the job. There has to be an obvious point where something is intrinsically interrelated to their military duties, promotion, demotion, transfer. That's obvious. That is talking about the state and readiness and discipline of the military. But the day-to-day activities of preparing or de-preparing a plane, of swabbing the hulls to making sure the light bulb is in, where does it stop? Do you have a case that has held that FARA does not apply to Title VII cases like this? Well, in the cases that I've seen, and particularly off the top of my head, I'm looking at Snyder and Filer, which I think are basically agency cases, but I think Filer might actually be a case. Not dual technician cases? Both of them are dual technician cases. There is EEO history saying that FARA doesn't apply here because this was the course of their civilian employment. Let's look back to what the genesis of what brings us here today. We filed a writ of mandamus not because we wanted to re-litigate the merits. We won. We won three times. We won at the AJ level. We won at the OFO level. We won with the PFE at the OFO. What did that file do to your EEOC claim? Once you file in federal court, doesn't that stop the EEOC from proceeding? That's another good question because the question is, does the filing of a writ stop the enforcement action of the EEO? I would dare say, I posit that a writ is not the same thing as filing a civil action. This is a very extraordinary remedy. We are not asking them, the court, to say make a decision on the merits or to make a decision on injury or causation. What we're asking for is for the courts to say, hey, government, why aren't you carrying out something that you're supposed to be doing? This has been litigated at the agency level three times. But in that writ, weren't you seeking to have the court review questions of military decision making? Isn't that part of what your writ sought? I'm sorry, I didn't hear that last part. Weren't you seeking to have a court review questions of military decision making? No. Forgive me. I was having the district court, and ultimately this court, review decisions of a federal civilian employer. The Texas National Guard, as . . . You sought disciplinary action against various military personnel. That was part of your writ. Is that right? Yes. I'll have to say yes because I don't recall . . . I don't know how that wouldn't involve military decision making. But they can be disciplined in their civilian capacity. A person can still lose their job in a civilian capacity but still maintain their National Guard position. There is nothing that the judge has said, or I think in the realm of anything we've talked about, that encroaches on a military decision. If the military doesn't want to do anything about it, the military doesn't have to regarding a military personnel decision. But when the military takes on the hat of a civilian employer, a federal civilian employer, they have to carry out their duties in that aspect. When I say duties, I don't mean military duties. I mean as a civilian federal employer duties. I think this case, like many others, are quite distinguishable to the ones that the government raised. In those cases, again, where it talks about discipline . . . I'm sorry, strike that . . . when it talks about transfer, enlistment, promotion, separation, and discharge. And actually, the judge in our case didn't even order discipline in the military realm. I believe it was the OFO who suggested they might want to look at it. Didn't order them to look at it. They're not required to look at it. And the OFO can't, and the EEO can't, tell them to do that. The individual who made the discriminatory statements in the review, the evaluation review, was a sergeant, a tech sergeant maybe, master sergeant, I've forgotten, military rank. I believe her supervisor was a tech sergeant who not only outranked her, but was also her supervisor. Can I pause you there? He outranks her. He is her commanding officer. I guess he's not an officer, a non-commissioned officer. An NCO, yes. I'm sorry, what's the question? But he outranks her. In the military capacity, yes. Right. So we have precedents. You've cited them in your brief. The other side cited them in their brief. The most obvious one would be the Walsh case, W-A-L-C-H, that specifically says that when it comes to military hierarchy and matters involving the way senior officers, or I would suppose I would have called it NCOs, interact with their subordinates, that that is the quintessential heartland of the Ferris Doctrine. But this decision didn't encroach upon the hierarchy of who outranks who. I thought that the nub of the complaint was the reasons, the discriminatory reasons. I think everyone agrees that they're discriminatory reasons. Actually, if I may, forgive me. The military doesn't believe so. I didn't see them to dispute. I don't think they're re-litigating the EEO complaint. No, I don't believe they are. They've remained silent on it. And if I may, there's a letter from March of 2015 from Colonel Santillo that basically says that there are no facts in this matter that rises to the concern of any investigatory issue that may be raised regarding the military discrimination matter. Therefore, any facts that were raised that were found as a matter of fact, a finding of fact by the judge, had nothing to do with any military disciplinary system. So the facts by the military's concession has nothing to do with the military. Well, I don't understand them to argue about discipline, but it was a review, right? It was an annual review where she got less than outstanding on her review. Her civilian review. Her civilian review. By her commanding officer. I keep saying commanding officer, but you know what I mean. No, no, no. So I'm very clear. Her civilian review done by her civilian supervisor, who happens to also be her military supervisor, on the weekends, but not at that case, but not at that situation. None of the facts, all the findings of facts, occurred during her civilian employment. If the judge had ordered that she be transferred, if the judge had ordered that he be removed from service, if she had ordered that the military promote her. But that's not the situation here. And I don't think that's what Congress intended. As Congress gave clarifying language, not new language as the government has tried to argue, military dual status technicians have always had the right to Title VII protections. Now, forgive me, Your Honor, did I answer your question? I want to make sure I'm not. I think I understand your response. I'm not sure it's responsive, but I understand what you're saying. Okay. Are there any other questions from the bench? Seeing none, and I have just a minute left, I do want to make one last point. The EEO does have a responsibility to continue their enforcement action. We argue that the writ in and of itself is not a civil action. If you look specifically at the code, I believe it's under E4000, forgive my citation, but it basically says that the federal agency shall continue and shall not stop with regards to their enforcement actions. The EEO should not have stopped. The EEO's regulations, the CFR, are in contradiction of what the USC says. Did you appeal that to the EEOC, the fact that they just rolled over? You mean when we filed the writ of Matt Damas? Right. The writ was rejected. Yeah, there's nothing there. So. Okay, thanks. Thank you.  Ali. Good morning. May it please the Court. I'm Lowell Sturgill from the Department of Justice, representing the federal appellees. To begin, the district court correctly held that under the EEOC's regulations, the plaintiff's filing of this civil action terminated the EEOC's authority to enforce its orders. The relevant regulation is cited in our brief. It is 29 CFR 1614.409, and I believe it clearly applies in this situation because the filing of a mandamus action is a civil action. This is the EEOC's position, which would be entitled to deference even if there were any questions, but I don't think there is any question about that at all. So, again, that I think takes care of the claims against the EEOC. There is no claim against them by their own regulations. The only other claim in the case is the Ferris Doctrine claim, the Title VII issue itself. And the district court correctly held that the Ferris Doctrine does bar this suit because the test is whether the claims arise purely out of the dual status technician's civilian status. And for the reasons the district court gave, these claims do not purely arise out of civilian status. There are two claims. First is a performance appraisal claim, and as the court noted in the Walsh case, this court said, this is, I'd like to quote it if I could, 533F3 at 301. A court may not reconsider what a claimant's superiors did in the name of personnel management, including determining performance level. So that, I think, is just right on point and controlling. The other claim is the no light duty claim. And the plaintiff's argument here is that the injury occurred during the civilian work week. But in Walsh as well. I don't understand these dual techs. So, yes, the Walsh case, I think, is the best case that lays all this out. Basically, as Walsh explains, these techs are only nominal federal civilian employees, what they do on the job, both during the week and on the weekdays, is integrally related to the military mission. It's not dual, it's either or. So they are civilian only with respect to two elements. Congress made them civilian, nominally civilian, so that it could give them pay and benefits that federal employees receive. Like Title VII claims? No. Under the court's Walsh decision, if there ever were a case where something were purely civilian, then the answer would be yes. But the problem is the court in Walsh also said that if this is 533F30. How many paychecks do they get? Pardon? How many paychecks was this dual tech getting? I actually don't know the answer to that question. But Walsh says that 533F30-297, it is impossible to disentangle their military role and command structure from their civilian employment. And that's because, as we've heard, her civilian superior was her military commander. He was a master sergeant. So on both the weekday and on the weekend, the same person was her superior. The person who did this performance of evaluation on the civilian side was her military superior. And so she would be and is challenging an essentially military decision. Again, what these people are doing, she was a mechanic servicing F-16 fighter pilots. It just doesn't get any more military than that. What happens to the award that she was awarded, the monetary award, attorney's fees? What happens to that? So the court discussed that issue in a footnote in the Walsh decision. Again, here the EEOC stopped its enforcement efforts because she filed this action. So what the Walsh footnote says is that if the court ends up dismissing without prejudice, then the EEOC will then feel free to again take up enforcement efforts on the order, whatever, according to its own discretion. So if this case is dismissed for lack of jurisdiction, that reactivates the EEOC claim? Jurisdiction would be without prejudice? Is that the question, I guess? So I think that seems to follow. But again, I think the district court dismissed the case on the merits. So under this court's decisions, your decision on the merits is presumed to be with prejudice. So I think if you affirm the judgment below, then the EEOC would not be able to, as it sees it, undertake enforcement efforts again. Maybe you're answering my question, which is along the lines of Judge Clement's question, and that is if we affirm what remedy, what course of action is available to her, and I guess your answer is there is no remedy. I thought you were saying initially that maybe the EEOC could again take up efforts to enforce its order, but now you're saying there's a dismissal below with prejudice, so maybe she's done. Her goose is cooked if we defer. If you just affirm, if I understand the district court's ruling correctly, then I think the EEOC would not take up enforcement of its orders again because the district court, as I understand it, dismissed with prejudice because it dismissed on the merits. If you view the decision differently as a jurisdictional matter, then that would be a different question, potentially. Is the view of the government that FARIS is a jurisdictional requirement or jurisdictional rule? So that's an interesting question because most of the FARIS cases that find that the FARIS doctrine is applicable dismiss for lack of jurisdiction, and the government does move to dismiss on 12B1 grounds. So that's correct, but I would also say that if the government didn't raise the FARIS doctrine below and tried to do so, we couldn't do so on the thought that it's a jurisdictional argument, it can't be waived. So it's a little bit unclear. But if the government's position is it's jurisdictional, then as to you, how could we affirm? Right, because there would be no jurisdiction to rule on the merits as to the government, below or here. So the FARIS, right, you would say the FARIS doctrine applies, and you would say, therefore, the district court lacked jurisdiction to do anything other than dismiss the claims against, certainly against the guard. The claims against the EEOC, I'm not so sure, right, because I don't, they weren't dismissed on FARIS doctrine grounds. The court dismissed those for lack of proof of the elements of mandamus. Right, I'm sorry. I meant just as to the, I should be over, I'm being overbroad. I don't mean the government, all of you. I just mean just as to the military government dependence. I think that's correct. And again, with respect to the light duty claim, the plaintiffs allege that because this happened during the work week, that's the end of it, and the suit can be brought. It's civilian. But if you look at Walsh, two things. First of all, Walsh said that all the claims in that case also occurred while the plaintiff was in a civilian status. That's 533F3rd at 295. So I think Walsh is directly controlling and rejects the plaintiff's argument there. And then if you look at what the reasons were that the court gave for dismissing that claim under FARIS, it said a lot of things that also apply here. For example, this is all at, I'm sorry, I'm talking about the Filer case. Filer was a case that occurred after Walsh, and if you look at 690F3rd at 649, the court said, noted the fact that the military and civilian jobs were identical. That's also true in this case. In that case, the alleged tortfeasor was the supervisor both during the week and on weekends. That's also true in this case. And then third, the claims that would require the court to second-guess military personnel decisions, that's also true in this case. What you know is from the record, the military did actually conduct a military investigation of these claims, and that investigation resulted in a finding that the claims were unsubstantiated. So what Planoff is really requesting is for this court to second-guess that military determination. And Filer and Walsh and all the other cases say that is not permissible. Just two other final points with respect to the claims against the EEOC. I think it's clear that, again, the district court correctly dismissed those claims because the filing of this civil action terminated the EEOC's ability to rule on those or to take up other enforcement efforts, but it's also the case that the plaintiffs can't prove any clear right to relief. Under the regulations, the most that the EEOC can do, once a matter is referred to it, is either refer the matter to the Office of Special Counsel or issue a show cause order. But if you look at the regulations, they use the term may for both of those forms of relief. So they're discretionary on the EEOC's part. And again, a discretionary duty can't support the existence of a clear duty that's necessary to support a mandamus action. So there's a second reason why her claims against the EEOC fail. I'd be happy if you'd like to discuss the conflict of interest issue that the plaintiffs have raised, which they didn't talk about this morning, but essentially they're saying the same government lawyer can't represent both the EEOC and the National Guard Bureau, and that claim fails because, as the Office of Legal Counsel has explained, the client of a Department of Justice lawyer is the United States. So there is no conflict of interest, and that does not conflict with the Texas Professional Conduct Rule, because that rule prevents a lawyer from representing the interest of another client, and the key term is client there. So again, my client is the United States. It's not the EEOC or the National Guard Bureau, although certainly they're clients in a sense, but my client is the United States. We also didn't – well, I think I should allow my friend to have his four minutes, unless the Court has any questions. Thank you, Counsel. Thank you. Thank you. May it please the Court, my name is Matthew Diehl, and I'm here on behalf of the Texas Adjutant General. The Adjutant General asserted its sovereign immunity under the 11th Amendment at every stage of this litigation. It is Neville's burden, then, to allege a valid waiver of that immunity, and she consistently failed to do so. Because she failed to meet her burden, the claims against the State cannot proceed. Neville's stated basis for jurisdiction, 28 U.S.C. Section 1361, does not provide a waiver of the Adjutant General's sovereign immunity, and the Adjutant General is a State officer, not subject to that Mandamus Statute 1361. Neville has argued that the Adjutant General is a hybrid State-Federal official, but the two cases that she cited in her appellate brief for that purpose are limited in their holdings. She cited the Naismith case, which does have a passage that says the Adjutant General is a Federal officer, but for purposes of Federal rule of appellate procedure 4A. And then she also cited the Lipscomb case from 2003 from the Fifth Circuit that says the Adjutant General is a Federal officer, but for purposes of the Federal Service Labor Management Relations Act. So neither of these two cases that she cited to argue that the Adjutant General is a Federal officer hold that he's or she is a hybrid Federal-State official in the context of a Mandamus petition. Why does it matter that Lipscomb doesn't involve Title VII? I mean, if the Adjutant General is a Federal officer for certain Federal statutes, why would it matter that Lipscomb involved the Fair Labor Standards Act? Just because it's limited in their holding. And the main point here is that the State has asserted its sovereign immunity. She's obligated to cite a waiver of that immunity. It's not 1361. She did argue in her brief on two separate occasions in the district court that it's Title VII that constitutes that waiver, but it can't be Title VII because she didn't bring her claim under Title VII. She's bringing a Mandamus petition. So neither of those two cases hold what she is stating that they stand for. And we took our position, this position at the district court and in our brief before this court, but, of course, Neville forewent her option to reply to the State. Does that matter if, I mean, you guys, it's not like you weren't on, it's not like she forfeited her argument, right, on the Eleventh Amendment because you guys clearly responded to it. On the Eleventh Amendment, throughout the entire process, she hasn't cited a valid waiver of the State's immunity, and she's obligated to do so. Right. But you're not saying that we are prohibited from deciding whether and to what extent there is a valid waiver of Eleventh Amendment immunity because she didn't respond. No, absolutely not. And even so, even if Neville is able to persuade this court that the Adjutant General is a federal officer in these circumstances and or that 1361 provides that waiver of sovereign immunity, her underlying claims are still going to be barred by Ferris. I'm happy to answer any questions on these State-specific points. Otherwise, I yield the balance of my time. Thank you. Thank you. Roboto. Your Honors, thank you. I believe with regard specifically to Welch, if we look at the situation in that matter, the discriminatory acts occurred concurrently both in the military and civilian arena. In that situation, obviously, when an administrative judge says there needs to be something done on the military side, that is infringing into the Ferris bubble, and that case could not be upheld. But this is not that situation. This situation is all the occurrences occurred, all the claims and occurrences occurred in the course of her civilian job. As I mentioned from the 2015 letter from Colonel Santillo, there were no facts that were involved in the military EEO process. It was all in the civilian aspect. So Welch in that aspect doesn't apply here. With regard specifically to the EEO, the EEO failed to act within 180 days both with its first appeal before the OFO and also with the petition for enforcement, two and a half years for the first, well over almost a year for the second. And forgive me for not remembering the case off the top of my head, but from the district court, the district circuit, 180 days is basically considered too long. It's basically arbitrary and capricious, and the agency needs to show cause why they haven't acted. This isn't even an enforcement issue, at least with the first one. In Long Island, it's the second one. Why do we have EEO laws if they're not enforceable? I mean, that just goes beyond reason. Briefly on the conflict of interest issue, the Department of Justice may allow one attorney to work on a case where there are two interests involved, but just because a state or basically just because the federal government may allow an attorney to work on a marriage, a divorce where both parties are clearly at odds or at least one party is at odds, doesn't mean it complies with the state bar rules. And it's just fundamentally unclear how a party who is representing the interests of one has complete opposite interests and represent the other party who has complete opposite interests. Lastly, in Neesmith and Equal employment, which Mr. Diehl brought up, the cases show that the Texas Air National Guard and the Texas National Guard all can wear a federal hat, as they do in this case, as all state adjunct generals do in these types of EEO cases. There was never a question of jurisdiction because we wrote the writ from the Texas Air National Guard, and I believe it was later amended to include everyone down the line, including the Secretary of the DOD, which was accepted, and that party is here before us now. If the Texas Air National Guard is saying that they have absolutely no obligations to comply with any federal issue, they need to give their money back from all the planes and people and materials they've been spending federal government monies on because that should just be a state issue. I open to any questions. If we affirm the district court, do you have any other recourse or form of relief for your client in that order she has? If you affirm with the exception of the EEO matter, and forgive me, I forgot the terms you had used earlier, but if the EEO still remained viable, their responsibilities, then, of course, she can go back to the EEO for enforcement, but then if there's a may in there, when does she ever get anything? Well, I'm asking you. I'm assuming you've thought this all the way through to the public. Basically, if you affirm this, we're done. If you affirm the lower court, we're done, and as no one has contested, she was discriminated against, and as the Ninth Circuit says, sexual discrimination is not a military mission, and it shouldn't be allowed to be here either. Does she still work there? Does she still work there? She doesn't work there because she can't, because she's 100% permanently totally disabled, and she hasn't been able to do her National Guard duties for at least two years prior, her military guard duties two years prior to her final discharge. Can I ask one last question? Absolutely. Where it applies, is FAERS a jurisdictional rule? Forgive me? Where it applies, is FAERS jurisdictional? Is it a good 12B1 motion? Does it matter? Where it applies. I realize that you don't think it applies, but in a case where it does apply. In the cases where we've seen where it was clearly a military command decision, I'm sorry, strike that, not a military command decision, but with regards to the discipline and the, forgive me, you know who I'm talking, then yes, it would be, but that's not the case here. Thank you, counsel. Thank you. We'll take the matter under advisement.